## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

JOYCE MAYS,
    Plaintiff

    vs

COMMISSIONER OF
SOCIAL SECURITY,
    Defendant

Case No. 1:08-cv-871
Barrett, J.
Litkovitz, M.J.

**REPORT AND
RECOMMENDATION**

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final

decision of the Commissioner of Social Security (Commissioner) denying plaintiff's application

for disability insurance benefits (DIB). This matter is before the Court on plaintiff's Statement of

Errors (Doc. 17) and the Commissioner's response in opposition. (Doc. 22).

### PROCEDURAL BACKGROUND

Plaintiff was born in 1948 and was 59 years old at the time of the ALJ's decision. She

has a high school education and past relevant work as a secretary. Plaintiff filed an application

for DIB in November 2004 alleging an onset date of disability of January 7, 2004, due to arthritis

in her spine and hands, post right knee replacement, and a needed left knee replacement. Her

application was denied initially and upon reconsideration. Plaintiff then requested and was

granted a de novo hearing before an administrative law judge (ALJ). Plaintiff, who was

represented by counsel, appeared at a hearing before ALJ Thaddeus J. Armstead, Sr.

On April 23, 2008, the ALJ issued a decision denying plaintiff's DIB application. The

ALJ determined that plaintiff suffers from the following severe impairments: degenerative joint

disease of the knees, residuals of right knee joint replacement surgery, morbid obesity, cervical

and lumbar spine degenerative disc disease, asthma, and rotator cuff tendinitis.  The ALJ found

that plaintiff's impairments do not meet or equal the level of severity described in the Listing of

Impairments. (Tr. 26).  According to the ALJ, plaintiff retains the residual functional capacity

(RFC) to perform sedentary work with the following limitations:

> It is found that her capacity for sedentary work is subject to the following
> additional limitations: the two hours of standing and walking are spread out over
> the eight hour work day and are not continuous; the opportunity to sit/stand,
> alternate, ten minutes per hour; no more than occasional climbing of ramps or
> stairs; no climbing of ladders, ropes, or scaffolding; only occasional stooping; no
> kneeling, crouching, or crawling; only occasional (not repetitive) overhead
> reaching.

(Tr. 28).  The ALJ determined that plaintiff's subjective allegations of disability are less than

credible. (Tr. 29).  The ALJ also determined that plaintiff is capable of performing her past

relevant work as a secretary.  The ALJ further determined that plaintiff is capable of performing a

significant number of other jobs in the national economy including jobs as an appointment clerk,

receptionist, and billing clerk. (Tr. 29-30).  Accordingly, the ALJ concluded that plaintiff is not

disabled under the Act.

Plaintiff's request for review by the Appeals Council was denied, making the decision of

the ALJ the final administrative decision of the Commissioner.

## APPLICABLE LAW

The following principles of law control resolution of the issues raised in this case.

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g).

The Court's sole function is to determine whether the record as a whole contains substantial

evidence to support the Commissioner's decision.  The Commissioner's findings stand if they are

supported by "such relevant evidence as a reasonable mind might accept as adequate to support a

2

conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citing *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). In deciding whether the Commissioner's findings are supported by substantial evidence, the Court must consider the record as a whole. *Hephner v. Mathews*, 574 F.2d 359 (6th Cir. 1978).

To qualify for disability insurance benefits, plaintiff must meet certain insured status requirements, be under age 65, file an application for such benefits, and be under a disability as defined by the Social Security Act. 42 U.S.C. §§ 416(i), 423. Establishment of a disability is contingent upon two findings. First, plaintiff must suffer from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 423(d)(1)(A). Second, the impairments must render plaintiff unable to engage in the work previously performed or in any other substantial gainful employment that exists in the national economy. 42 U.S.C. § 423(d)(2).

Regulations promulgated by the Commissioner establish a sequential evaluation process for disability determinations. 20 C.F.R. § 404.1520. First, the Commissioner determines whether the individual is currently engaging in substantial gainful activity; if so, a finding of nondisability is made and the inquiry ends. Second, if the individual is not currently engaged in substantial gainful activity, the Commissioner must determine whether the individual has a severe impairment or combination of impairments; if not, then a finding of nondisability is made and the inquiry ends. Third, if the individual has a severe impairment, the Commissioner must compare it to those in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1. If the impairment meets or equals any within the Listing, disability is presumed and benefits are awarded. 20 C.F.R. § 404.1520(d). Fourth, if the individual's impairments do not meet or equal

3

those in the Listing, the Commissioner must determine whether the impairments prevent the performance of the individual's regular previous employment. If the individual is unable to perform the relevant past work, then a prima facie case of disability is established and the burden of going forward with the evidence shifts to the Commissioner to show that there is work in the national economy which the individual can perform. *Lashley v. Secretary of H.H.S.*, 708 F.2d 1048 (6th Cir. 1983); *Kirk v. Secretary of H.H.S.*, 667 F.2d 524 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983).

Plaintiff has the burden of establishing disability by a preponderance of the evidence. *Born v. Secretary of Health and Human Servs.*, 923 F.2d 1168, 1173 (6th Cir. 1990); *Bloch v. Richardson*, 438 F.2d 1181 (6th Cir. 1971). Once plaintiff establishes a prima facie case by showing an inability to perform the relevant previous employment, the burden shifts to the Commissioner to show that plaintiff can perform other substantial gainful employment and that such employment exists in the national economy. *Harmon v. Apfel*, 168 F.3d 289, 291 (6th Cir. 1999); *Born*, 923 F.2d at 1173; *Allen v. Califano*, 613 F.2d 139 (6th Cir. 1980). To rebut a prima facie case, the Commissioner must come forward with particularized proof of plaintiff's individual capacity to perform alternate work considering plaintiff's age, education, and background, as well as the job requirements. *O'Banner v. Secretary of H.E.W.*, 587 F.2d 321, 323 (6th Cir. 1978). *See also Richardson v. Secretary of Health & Human Services*, 735 F.2d 962, 964 (6th Cir. 1984) (per curiam). Alternatively, in certain instances the Commissioner is entitled to rely on the medical-vocational guidelines (the "grid") to rebut plaintiff's prima facie case of disability. 20 C.F.R. Subpart P, Appendix 2; *O'Banner*, 587 F.2d at 323. *See also Cole v. Secretary of Health and Human Services*, 820 F.2d 768, 771 (6th Cir. 1987).

4

Pain alone, if the result of a medical impairment, may be severe enough to constitute disability. *Kirk v. Secretary of H.H.S.,* 667 F.2d 524, 538 (6th Cir. 1981), *cert. denied,* 461 U.S. 957 (1983). In order to find plaintiff disabled on the basis of pain alone, the Commissioner must first determine whether there is objective medical evidence of an underlying medical condition. If there is, the Commissioner must then determine: (1) whether the objective medical evidence confirms the severity of pain alleged by plaintiff; or (2) whether the underlying medical impairment is severe enough that it can reasonably be expected to produce the allegedly disabling pain. *Duncan v. Secretary of H.H.S.*, 801 F.2d 847, 852-53 (6th Cir. 1986). *See also Felisky v. Bowen*, 35 F.3d 1027, 1038-39 (6th Cir. 1994); *Jones v. Secretary of H.H.S.*, 945 F.2d 1365, 1369 (6th Cir. 1991). This test, however, "does not require . . . 'objective evidence of the pain itself.'" *Duncan*, 801 F.2d at 853. Where a complaint of pain is not fully supported by objective medical findings, the Commissioner should consider the frequency and duration of pain, as well as other precipitating factors including the effect of the pain upon plaintiff's activities, the effect of plaintiff's medications and other treatments for pain, and the recorded observations of pain by plaintiff's physicians. *Felisky*, 35 F.3d at 1039-40.

Where the medical evidence is consistent, and supports plaintiff's complaints of the existence and severity of pain, the ALJ may not discredit plaintiff's testimony and deny benefits. *King v. Heckler*, 742 F.2d 968, 975 (6th Cir. 1984). Where, however, the medical evidence conflicts, and there is substantial evidence supporting and opposing a finding of disability, the Commissioner's resolution of the conflict will not be disturbed by the Court. *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983) (per curiam). In either event, the ALJ must articulate, on the record, his evaluation of the evidence and how it relates to the factors listed

above. *Felisky*, 35 F.3d at 1039-41.

It is well established that the findings and opinions of treating physicians are entitled to substantial weight. "In general, the opinions of treating physicians are accorded greater weight than those of physicians who examine claimants only once." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 530-31 (6th Cir. 1997). *See also Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985) ("The medical opinions and diagnoses of treating physicians are generally accorded substantial deference, and if the opinions are uncontradicted, complete deference."); *King v. Heckler*, 742 F.2d 968, 973 (6th Cir. 1984) (same); *Lashley v. Secretary of HHS*, 708 F.2d 1048, 1054 (6th Cir. 1983) (same). Likewise, a treating physician's opinion is entitled to weight substantially greater than that of a non-examining medical advisor. *Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985); *Lashley v. Secretary of H.H.S.,* 708 F.2d 1048, 1054 (6th Cir. 1983). If a treating physician's "opinion on the issue(s) of the nature and severity of [a claimant's] impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case," the opinion is entitled to controlling weight. 20 C.F.R. § 1527(d)(2); *see also Blakely v. Commissioner*, 581 F.3d 399, 406 (6th Cir. 2009); *Wilson v. Commissioner*, 378 F.3d 541, 544 (6th Cir. 2004)*; Walters*, 127 F.3d at 530. "The treating physician doctrine is based on the assumption that a medical professional who has dealt with a claimant and his maladies over a long period of time will have a deeper insight into the medical condition of the claimant than will a person who has examined a claimant but once, or who has only seen the claimant's medical records." *Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994).

The Social Security regulations likewise recognize the importance of longevity of

6

treatment, providing that treating physicians "are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations." 20 C.F.R. § 404.1527(d)(2). In weighing the various opinions and medical evidence, the ALJ must consider other pertinent factors such as the length, nature and extent of the treatment relationship, the frequency of examination, the medical specialty of the treating physician, the opinion's supportability by evidence and its consistency with the record as a whole. 20 C.F.R. § 404.1527(d)(2)-(6); *Wilson*, 378 F.3d at 544. In terms of a physician's area of specialization, the ALJ must generally give "more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist." 20 C.F.R. § 404.1527(d)(5).

If the Commissioner's decision is not supported by substantial evidence, the Court must decide whether to reverse and remand the matter for rehearing or to reverse and order benefits granted. The Court has authority to affirm, modify, or reverse the Commissioner's decision "with or without remanding the cause for rehearing." 42 U.S.C. § 405(g); *Melkonyan v. Sullivan*, 111 S. Ct. 2157, 2163 (1991).

Where the Commissioner has erroneously determined that an individual is not disabled at steps one through four of the sequential evaluation, remand is often appropriate so that the sequential evaluation may be continued. *DeGrande v. Secretary of H.H.S.*, 892 F.2d 1043 (6th Cir. 1990) (unpublished), 1990 WL 94. Remand is also appropriate if the Commissioner applied an erroneous principle of law, failed to consider certain evidence, failed to consider the combined

7

effect of impairments, or failed to make a credibility finding. *Faucher v. Secretary of H.H.S.*, 17 F.3d 171, 176 (6th Cir. 1994). Remand ordered after a hearing on the merits and in connection with an entry of judgment does not require a finding that the Commissioner had good cause for failure to present evidence at the prior administrative hearing. *Faucher*, 17 F.3d at 173.

Benefits may be immediately awarded "only if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits." *Faucher,* 17 F.3d at 176. *See also Abbott v. Sullivan*, 905 F.2d 918, 927 (6th Cir. 1990); *Varley v. Secretary of Health and Human Services*, 820 F.2d 777, 782 (6th Cir. 1987). The Court may award benefits where the proof of disability is strong and opposing evidence is lacking in substance, so that remand would merely involve the presentation of cumulative evidence, or where the proof of disability is overwhelming. *Faucher*, 17 F.3d at 176. *See also Felisky v. Bowen*, 35 F.3d 1027, 1041 (6th Cir. 1994); *Mowery v. Heckler,* 771 F.2d 966, 973 (6th Cir. 1985).

## OPINION

The pertinent medical findings and opinions have been adequately summarized by the parties in their briefs (Doc. 17 at 6-9; Doc. 22 at 3-7) and will not be repeated here. Where applicable, the Court shall identify the medical evidence relevant to its decision.

Plaintiff assigns three errors in this case: (1) the ALJ erred in failing to find carpal tunnel syndrome to be a "severe" impairment; (2) the ALJ erred in rejecting the treating physicians' opinions concerning plaintiff's residual functional capacity; and (3) the ALJ erred in assessing plaintiff's pain and other symptoms. For the reasons that follow, the Court finds the ALJ's decision is not supported by substantial evidence and should be reversed.

**1. The ALJ's finding that plaintiff's carpal tunnel syndrome is not a severe impairment is supported by substantial evidence.**

A severe impairment or combination of impairments is one which significantly limits the physical or mental ability to perform basic work activities. 20 C.F.R. §404.1520(c). Basic work activities relate to the abilities and aptitudes necessary to perform most jobs, such as the ability to perform physical functions, the capacity for seeing and hearing, and the ability to use judgment, respond to supervisors, and deal with changes in the work setting. 20 C.F.R. §404.1521(b). Plaintiff is not required to establish total disability at this level of the sequential evaluation. Rather, the severe impairment requirement is a threshold element which plaintiff must prove in order to establish disability within the meaning of the Act. *Gist v. Secretary of H.H.S.*, 736 F.2d 352, 357 (6th Cir. 1984). An impairment will be considered nonsevere only if it is a "slight abnormality which has such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, and work experience." *Farris v. Secretary of H.H.S.*, 773 F.2d 85, 90 (6th Cir. 1985) (citing *Brady v. Heckler*, 724 F.2d 914, 920 (11th Cir. 1984)). The severity requirement is a "*de minimus* hurdle" in the sequential evaluation process. *Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir. 1988). *See also Rogers v. Commissioner*, 486 F.3d 234, 243 n.2 (6th Cir. 2007).

Plaintiff contends the ALJ's finding of non-severe carpal tunnel syndrome is without substantial support in the record. In support of her argument, plaintiff cites to medical records showing her complaints of tingling in both hands that woke her up at night and caused her to drop things. (Tr. 375). On examination, she displayed bilateral positive Tinel's and Phalen's test in both wrists with decreased sensation in the median nerve distributions. (Tr. 375). EMG nerve conduction testing revealed moderately severe carpal tunnel syndrome. (Tr. 367). Conservative

9

treatment, including splinting, use of vitamin B6, and activity modification, failed. (Tr. 367).

Plaintiff underwent carpal tunnel release surgery in July 2005. (Tr. 367). The post-operative

report noted that plaintiff continued to have "discomfort" and weakness (Tr. 365) and to wear a

brace on her right wrist. (Tr. 453). Plaintiff also reported to the Social Security Administration

that "arthritis" in her hands affected her ability to type, write, and grip objects when she was

employed as a secretary. (Tr. 74).

The ALJ determined that carpal tunnel syndrome is not a severe impairment. (Tr. 26).

The ALJ noted that plaintiff's carpal tunnel syndrome was effectively treated in 2005 and that

post-surgical medical records confirmed improvement in plaintiff's condition. (Tr. 26, citing Tr.

366).

The ALJ's non-severity finding is supported by substantial evidence. Despite plaintiff's

personal report to the Social Security Administration that she has "arthritis" in her hands,

plaintiff points to no medical records showing she has ever been diagnosed with arthritis in her

hands. More importantly, the first medical record showing carpal tunnel syndrome is from

March 2005. (Doc. 17, citing Tr. 375). After conservative treatment modalities failed, plaintiff

underwent surgery four months later in July 2005. (Tr. 367). Although plaintiff reported she still

experienced discomfort and weakness in August 2005 (Tr. 365), Dr. Bell, plaintiff's treating

orthopedist, opined that plaintiff's "postoperative pillar pain should resolve uneventfully." (Tr.

365). Plaintiff cites to no medical records after August 2005 showing carpal tunnel syndrome

continued to limit her in any way. In fact, when Dr. Bell assessed plaintiff's functional capacity

in February 2006, Dr. Bell did not report that carpal tunnel syndrome continued to be an

impairment for which plaintiff was treated nor did he place any limitations on plaintiff in terms

10

of feeling and handling which one would expect if carpal tunnel syndrome continued to limit plaintiff. (See Tr. 261-63). The medical evidence does not show that plaintiff experienced any residual limitations from the carpal tunnel syndrome after her surgery that significantly limit her ability to perform basic work activities. There is substantial evidence to support the ALJ's severity finding on carpal tunnel syndrome.

Plaintiff also argues that the ALJ erred by not recognizing significant work related limitations from her carpal tunnel syndrome "prior to the claimant's surgery on 7/28/05 (the claimant alleged an onset date of 1/7/04)" (Doc. 17 at 12), suggesting that she may be entitled to a closed period of disability if the limitations from her carpal tunnel syndrome were considered by the ALJ in determining plaintiff's RFC. Yet, as noted above, the first evidence of carpal tunnel syndrome was in March 2005, and not back to plaintiff's alleged onset of January 2004. The ALJ did not err by failing to impose further limitations on plaintiff's residual functional capacity based on her carpal tunnel syndrome.

For these reasons, the Court determines that the ALJ's finding that plaintiff's carpal tunnel syndrome is not a severe impairment is supported by substantial evidence.

## 2. The ALJ erred in rejecting the treating physicians' opinions concerning plaintiff's residual functional capacity.

Next, plaintiff contends the ALJ failed to accord proper deference to the opinions of Drs. Mital and Bell, plaintiff's treating physicians, in assessing plaintiff's RFC. Dr. Jonathon Bell, plaintiff's treating orthopedic surgeon, assessed plaintiff's residual functional capacity on July 25, 2006. Dr. Bell opined that plaintiff could lift only one to two pounds occasionally; stand only 10 minutes in an eight hour day due to status post total knee replacement of the right knee and end-stage arthritis of the left knee; and sit for a total of 1 hour in an 8-hour day due to lumbar

Case: 1:08-cv-00871-MRB-KLL Doc #: 24 Filed: 11/08/10 Page: 12 of 23 PAGEID #: 159

degenerative disc disease. Dr. Bell also stated that plaintiff could "never" stoop, crouch, kneel or crawl, and that reaching and pushing/pulling were limited. (Tr. 361-363). Dr. Bell noted that plaintiff "continues to have constant pain in her back with radicular complaints in her legs as well, bilateral shoulder pain (due to tendinitis) and left knee pain due to arthritis." (Tr. 363). Dr. Bell "recommend total permanent disability." (Tr. 363).

Dr. Chetna Mital, plaintiff's treating internist, opined that plaintiff could lift only four to five pounds at one time and stand for a total of one hour in an eight-hour day. Dr. Mital also limited plaintiff's ability to reach and handle. (Tr. 404-406). In a separate statement, dated September 26, 2007, Dr. Mital reported that this "patient has lower extremity edema when legs are dependent.[1] She needs to keep her legs elevated to prevent this." (Tr. 470).

The ALJ declined to give controlling or even deferential weight to the opinions of Drs. Bell and Mital because their opinions were "neither well supported by medically acceptable clinical and laboratory diagnostic techniques nor consistent with other substantial evidence in the case record." (Tr. 24). The ALJ stated:

> The only plausible explanation for the rather pessimistic assessment of the claimant's functional capabilities provided by these treating physicians is that such an assessment was based on the uncritical acceptance of the claimant's subjective complaints and allegations. . . . The claimant undoubtedly has some functional limitations associated with her documented impairments, but the weight of the evidence of record does not establish that such impairments would render the claimant disabled from all work activity. The claimant may be restricted to sedentary exertion as reported by Dr. Starr and Dr. Congbalay but there is no substantial evidence of impairment that would prevent the claimant from effectively performing activities that involve the minimal exertion required for sedentary work.

---

[1]Dependent edema is "a fluid accumulation in the tissues that is influenced by gravity. It is usually greater in the lower part of the body than in the part above the level of the heart." http://medical-dictionary.thefreedictionary.com/dependent+edema (last accessed on Oct. 28, 2010).

(Tr. 24).

The ALJ's "reasons" for discounting the opinions of the treating physicians are without substantial support in the record. First, the ALJ's conclusory assertion that the treating physicians' assessments are not "well supported by medically acceptable clinical and laboratory diagnostic techniques nor consistent with other substantial evidence in the case record" (Tr. 24) is unaccompanied by any explanation of the reasons for this assertion. The ALJ wholly failed to identify record evidence of the inconsistencies he relied upon to reject Dr. Bell's and Dr. Mital's assessments. (Tr. 24). Without any explanation on the record as to why the ALJ believed the treating physicians' opinions are not supported by or inconsistent with the other evidence of record, the Court is left to speculate on the rationale behind the ALJ's decision. The ALJ must do more than offer his conclusions. He must set forth his own interpretations, supported by the evidence in the case record, and explain why they, rather than the treating physicians', are correct. *Wilson*, 378 F.3d at 544.

The ALJ also concluded that the "extent of functional limitation described by treating physicians Drs. Bell and Mital is inconsistent with the weight of the evidence of record (including the functional capacity assessments provided by evaluating physicians Drs. Starr and Congbalay) and cannot be considered credible." (Tr. 25). Again, the ALJ failed to support this conclusion by citing specific record evidence. The ALJ pointed to the one-to-two and four-to-five pound lifting restrictions imposed by the treating physicians and concluded, without any explanation or citation to the record evidence, that such restrictions are "not supported by substantial evidence or clinical findings." (Tr. 25). The ALJ also found the one hour sitting restriction imposed by the treating physicians to be inconsistent with plaintiff's testimony that

13

she sits for extended periods at home. (Tr. 25).  However, plaintiff's actual testimony was that she sits for most of the day in a recliner with her legs elevated. (Tr. 547-48).  This is consistent with Dr. Mital's assessment that plaintiff must elevate her legs due to dependent edema. (Tr. 470; see also Tr. 216,  411, 416, 453).[2]

The ALJ also questioned whether plaintiff actually needed a cane to ambulate and noted that even if she did, this would not affect her ability to perform sedentary work. (Tr. 24).  The Court does not disagree that use of a cane does not altogether preclude sedentary work, but fails to see how this has any impact on the credibility or supportability of the treating physicians' functional assessments.  No physician has opined that plaintiff has the ability to perform work requiring a significant amount of walking, so whether or not plaintiff needs a cane to ambulate is of no consequence to whether plaintiff has the functional capacity to perform a sit-down job.

Second, the ALJ failed to follow Social Security regulations and Sixth Circuit law in evaluating and weighing Dr. Bell's and Dr. Mital's opinions on plaintiff's limitations.  The Sixth Circuit recently reaffirmed the long-standing principle that the "ALJ 'must' give a treating source opinion controlling weight if the treating source opinion is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques' and is 'not inconsistent with the other substantial evidence in [the] case record.'" *Blakely v. Commissioner*, 581 F.3d 399, 406 (6th Cir. 2009) (quoting *Wilson*, 378 F.3d at 544; 20 C.F.R. § 404.1527(d)(2)).  When the ALJ declines to

---

[2]The ALJ's citation to doppler study results showing no evidence of deep vein thrombosis (Tr. 25, citing Exhibit 12 F at 39) as evidence plaintiff does not need to elevate her legs is without substance in the record.  Dr. Mital opined that plaintiff needs to elevate her leg due to *edema*.  The doppler study was ordered in response to plaintiff's complaint of symptoms consistent with deep vein thrombosis, *i.e.*, a blood clot in her leg, and not in response to edema. (Tr. 444-445).  Thus, the fact that plaintiff does not have deep vein thrombosis does not negate her need to elevate her leg because of edema.

14

give controlling weight to a treating physician's assessment, "the ALJ must still determine how much weight is appropriate by considering a number of factors, including the length of treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and any specialization of the treating physician." *Blakely*, 581 F.3d at 406. In accordance with this rule, the ALJ must give "good reasons" for the ultimate weight afforded the treating physician opinion, based on the evidence in the record, *and the reasons must be sufficiently specific to enable meaningful review of the ALJ's decision. Id.* (citing 20 C.F.R. § 404.1527(d)(2); Social Security Ruling 96-2p, 1996 WL 374188, at *5; *Wilson*, 378 F.3d at 544) (emphasis added). The ALJ's failure to adequately explain the reasons for the weight given to a treating physician's opinion "*denotes a lack of substantial evidence*, even where the conclusion of the ALJ may be justified based upon the record." *Blakely*, 581 F.3d at 407 (emphasis in the original and quoting *Rogers v. Commissioner*, 486 F.3d 234, 243 (6th Cir. 2007)).

In this case, the ALJ committed an error of law when he failed to evaluate the assessments of Drs. Bell and Mital in accordance with Sixth Circuit precedent and Social Security regulations. Although the ALJ acknowledged he must consider the regulatory factors set forth in 20 C.F.R. § 404.1527(d)(2) in determining the weight to afford a treating physician's opinion (Tr. 24), there is no indication from the ALJ's decision that he applied any of the factors to the case before him in weighing the opinions of Drs. Bell and Mital. The ALJ failed to assign any weight to the opinions of Drs. Bell and Mital even though certain factors weigh in favor giving their opinions greater weight. Dr. Bell, an orthopedic specialist, has treated plaintiff for six years. (Tr. 359-403). His records over that six year period document the objective and

clinical findings supporting his assessment and treatment of plaintiff's orthopedic impairments. *Id.* Dr. Mital, plaintiff's treating internist, has treated plaintiff since 1998 and appears to have been intimately involved in plaintiff's care over a period of nearly ten years. (Tr. 168-349, 404-458, 471-517). The MRI and x-ray findings of record support an objective basis for plaintiff's pain and for the treating physicians' opinions. (Tr. 346-47; Tr. 167; Tr. 381; Tr. 377; Tr. 371; Tr. 164).

The only seemingly contrary reports are the February and June 2005 RFC opinions of the non-examining state agency physicians upon which the ALJ relied. Both Drs. Congbalay and Starr, the non-examining state agency physicians, opined that plaintiff was limited to sedentary work. (Tr. 27, 147-153, 351-357).[3] Yet, the opinions of these non-examining physicians were rendered before much of the medical evidence was presented in plaintiff's case, including the functional capacity assessments of Drs. Bell and Mital which incorporated limitations from plaintiff's bilateral shoulder tendinitis, an impairment not considered by the non-examining physicians. (See Tr. 23, 148, 352, 361-63, 404-406). Where much of the medical record reflects ongoing treatment by plaintiff's treating sources, there must be "some indication that the ALJ at least considered these facts before giving greater weight to an opinion that is not based on a review of a complete case record." *Blakely,* 581 F.3d at 409 (internal quotation and citations omitted).[4] The ALJ never addressed why the MRI and clinical findings entered into the record

---

[3] Although the signature pages of the reports from the state agency doctors are missing from the copy of the Court's administrative transcript, the Court accepts the ALJ's representation that Drs. Congbalay and Starr issued their opinions in February and June 2005 respectively.

[4] "'In appropriate circumstances, opinions from State agency medical . . . consultants . . . may be entitled to greater weight than the opinions of treating or examining sources.' Soc. Sec. Rul. 96-6p, 1996 WL 374180, at *3 (July 2, 1996). One such circumstance may occur, for example, when the 'State agency medical . . . consultant's opinion is based on a review of a complete case record that . . . provides more detailed and comprehensive information than what was available to the individual's treating source.'" *Blakely,* 581 F.3d at 409. That is not the

16

after the state agency doctors rendered their opinions do not support the treating physicians'

further restrictions on plaintiff's functioning.  Both Drs. Bell and Mital possessed the most

longitudinal evidence of plaintiff's physical impairments and were in the best position to assess

plaintiff's current and predicted functioning.  The ALJ erred when he rejected the treating

physicians' opinions based on the two reports of non-examining state agency physicians whose

opinions were based on a review of an incomplete case record.  *See* 20 C.F.R. § 404.1527(d)(2).

*See also Blakely,* 581 F.3d at 409; *Shelman v. Heckler*, 821 F.2d 316, 321 (6th Cir. 1987).

Nor can the Court accept the Commissioner's post-hoc rationalization in support of the

ALJ's decision. (Doc. 22 at 10-12).  Where the ALJ has failed to weigh a treating physician's

opinion in accordance with Social Security's procedural regulations, the Court cannot excuse the

failure even though there may be sufficient evidence in the record supporting the ALJ's decision:

> A court cannot excuse the denial of a mandatory procedural requirement
> protection simply because, as the Commissioner urges, there is sufficient evidence
> in the record for the ALJ to discount the treating source's opinion and, thus, a
> different outcome on remand is unlikely.  '[A] procedural error is not made
> harmless simply because the [aggrieved party] appears to have had little chance of
> success on the merits anyway.'  To hold otherwise, and to recognize substantial
> evidence as a defense to non-compliance with § 1527(d)(2), would afford the
> Commissioner the ability to violate the regulation with impunity and render the
> protections promised therein illusory.  The general administrative law rule, after
> all, is for a reviewing court, in addition to whatever substantive factual or legal
> review is appropriate, to 'set aside agency action . . . found to be . . . without
> observance of procedure required by law.'

*Wilson,* 378 F.3d at 546 (internal citations omitted).

The ALJ's rejection of the opinions of Drs. Bell and Mital is inconsistent with the legal

standards applicable for determining the weight to a treating physician's opinion and lacks

---

case here where the state agency doctors' opinions pre-date much of the medical evidence of record.

substantial support in the record. *Blakely*, 581 F.3d at 407. Although the ALJ was not bound by the treating physicians' opinions, the ALJ was obligated to articulate "good reasons" based on the evidence of record for not giving weight to such opinions. *Wilson*, 378 F.3d at 544. He failed to do so in this case. Accordingly, the ALJ's decision is not supported by substantial evidence and should be reversed. Plaintiff's second assignment of error should be sustained.

**3. The ALJ erred in assessing plaintiff's pain and other symptoms.**

Plaintiff contends the ALJ erred by not properly addressing the factors set forth in 20 C.F.R. § 404.1529 and Social Security Ruling 96-7p in assessing plaintiff's credibility. Specifically, plaintiff alleges the ALJ mischaracterized or misinterpreted plaintiff's testimony and overstated her ability to function. (Doc. 17 at 19-20).

In assessing plaintiff's allegations of pain and other symptoms, the ALJ must first determine whether there is objective medical evidence of an underlying medical condition. If so, the ALJ must then determine: (1) whether the objective medical evidence confirms the severity of pain alleged by plaintiff; or (2) whether the underlying medical impairment is severe enough that it can reasonably be expected to produce the allegedly disabling pain. *Duncan v. Secretary of H.H.S.*, 801 F.2d 847, 852-53 (6th Cir. 1986). *See also Felisky v. Bowen*, 35 F.3d 1027, 1038-39 (6th Cir. 1994); *Jones v. Secretary of H.H.S.*, 945 F.2d 1365, 1369 (6th Cir. 1991). This test, however, "does not require . . . 'objective evidence of the pain itself.'" *Duncan*, 801 F.2d at 853. Where a complaint of pain is not fully supported by objective medical findings, the ALJ should consider the frequency and duration of pain, as well as other precipitating factors including the effect of the pain upon plaintiff's activities, the effect of plaintiff's medications and other treatments for pain, and the recorded observations of pain by plaintiff's physicians. *Felisky*, 35

18

F.3d at 1039-40. *See also* Social Security Ruling 96-7p. If the plaintiff's statements about the

intensity, persistence, or functionally limiting effects of pain or other symptoms are not

substantiated by objective medical evidence, the ALJ must make a finding on the credibility of

the claimant's statements based on a consideration of the entire case record. SSR 96-7p. While

SSR 96-7p does not require the ALJ to analyze and elaborate on each of these factors when

making a credibility determination, the ALJ's decision "must contain specific reasons for the

finding on credibility, supported by the evidence in the case record, and must be sufficiently

specific to make clear to the individual and to any subsequent reviewers the weight the

adjudicator gave to the individual's statements and the reasons for that weight." Social Security

Rule 96-7p.

In this case, there is objective medical evidence of underlying medically determinable

physical impairments that could reasonably be expected to produce plaintiff's pain or other

symptoms, to wit: degenerative joint disease of the knees, residuals of right knee joint

replacement surgery, cervical and lumbar spine degenerative disc disease, asthma, and rotator

cuff tendinitis. (Tr. 164, 167, 247, 346-47, 371, 377, 384, 381). Given the existence of these

impairments, it was incumbent upon the ALJ to evaluate the intensity, persistence and limiting

effects of plaintiff's symptoms to determine the extent to which the symptoms limit her ability to

work.

In this regard, the ALJ cited to four factors in determining plaintiff was "less than

credible." (Tr. 29). The ALJ noted that plaintiff "maintains a household with her disabled

spouse" and "does light household chores." (Tr. 29). The ALJ also noted "no evidence of

adverse side effects from treatment or medication" that would prevent plaintiff from performing

sedentary work. (Tr. 29). Finally, the ALJ stated that plaintiff "was effectively treated with both conservative measures and surgery." (Tr. 29).

The ALJ's characterization of plaintiff's activities is overstated. Plaintiff testified she spends six to six and one-half hours sitting in her recliner with her legs elevated. (Tr. 548). Depending on how she is feeling, she tries to make the bed and about halfway through has to rest. She then goes back and finishes. (Tr. 548). She does "maybe" a load of laundry, puts dishes in the dishwasher, and cooks food on a typical day. (Tr. 548). She testified she sleeps in her recliner because she cannot lay flat in her bed without shoulder and knee pain. (Tr. 549). She reported that she is in "moderate to severe pain all the time. If I bend over or walk much I get short of breath. I have trouble getting out of a chair or trying to go up steps." (Tr. 85). "Trying to clean the house, taking a bath and cooking" exacerbate her symptoms. (Tr. 86). She experiences pain in her back, knees, feet, hands, arms, hips, ankles and legs. (Tr. 86). Aside from medications, plaintiff utilizes rest, changing positions, ice, elevation of the feet and laying down to alleviate pain. (Tr. 87). The ALJ's characterization of plaintiff's abilities to "maintain a household" and do "light household chores" does not accurately reflect plaintiff's functioning.

More importantly, while the ALJ opined that plaintiff's conservative treatment and surgery were effective in treating her various conditions, he never cited to record evidence supporting this conclusion. The evidence from plaintiff's treating doctors is to the contrary and, as explained above, the ALJ failed to provide good reasons for discounting their opinions.

The ALJ failed to sufficiently articulate his assessment of the evidence to assure the Court that he considered the relevant record evidence and to enable the Court to trace the path of his reasoning. Social Security Rule 96-7p. Accordingly, there is insufficient evidence in the

record to support the ALJ's findings as to credibility, and further-fact finding is necessary in order to properly evaluate plaintiff's pain credibility and subjective complaints pursuant to SSR 96-7p. Accordingly, the ALJ's credibility finding is not supported by substantial evidence and should be reversed.

**4. This matter should be reversed and remanded for further proceedings.**

In determining whether this matter should be reversed outright for an award of benefits or remanded for further proceedings, the Court notes that all essential factual issues have not been resolved in this matter, nor does the current record adequately establish plaintiff's entitlement to benefits as of her alleged onset date. *Faucher,* 17 F.3d at 176. This matter should be remanded for further proceedings pursuant to sentence four of § 405(g) due to the ALJ's failure to properly weigh the medical source opinions of record as required by the Social Security Regulations and Sixth Circuit law and due to errors in the ALJ's credibility determination. On remand, the Commissioner and the ALJ should be directed to (1) re-evaluate the medical source opinions and plaintiff's credibility under the legal criteria set forth in the Regulations, Rulings, and as required by case law; and (2) to determine anew whether plaintiff is under a disability within the meaning of the Social Security Act. Accordingly, this case should be remanded to the Commissioner and the ALJ under sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this Report and Recommendation.

## IT IS THEREFORE RECOMMENDED THAT:

This case be REVERSED and REMANDED for further proceedings pursuant to Sentence Four

of 42 U.S.C. § 405(g).

Date: _11/8/2010_

Karen L.  Litkovitz
United States Magistrate Judge

22

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

JOYCE MAYS,                                    Case No. 1:08-cv-871
     Plaintiff                               Barrett, J.
                                                     Litkovitz, M.J.

     vs

COMMISSIONER OF
SOCIAL SECURITY,
     Defendant

### NOTICE TO THE PARTIES REGARDING THE FILING OF OBJECTIONS TO R&R

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to these proposed findings and recommendations within **FOURTEEN DAYS** after being served with this Report and Recommendation ("R&R"). That period may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections. A party may respond to another party's objections within **FOURTEEN DAYS** after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters*, 638 F. 2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985).